UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

CIERRA R.,[1] *on behalf of M.I.R,*

                          Plaintiff,                    **DECISION AND ORDER**

        -against-                        25 Civ. 1799 (AEK)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
-------------------------------------------------------------X

**THE HONORABLE ANDREW E. KRAUSE, U.S.M.J.[2]**

Plaintiff Cierra R., on behalf of her minor daughter M.I.R., brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision the Commissioner of Social Security (the "Commissioner"), which denied her daughter's application for child Supplemental Security Income ("SSI").  ECF No. 1.  Plaintiff filed a brief in support of her appeal, ECF No. 17 ("Pl.'s Mem."), and the Commissioner filed a brief in response, ECF No. 22 ("Def.'s Mem.").[3] For the reasons that follow, Plaintiff's motion (ECF No. 16) is DENIED, and judgment must be entered in favor of the Commissioner.

---

[1] To preserve her privacy and that of her minor child, Plaintiff is referred to by her first name and the first initial of her last name.

[2] The parties consented to the jurisdiction of the undersigned for all purposes pursuant to 28 U.S.C. § 636(c) on March 17, 2025.  ECF No. 9.

[3] While Plaintiff labeled her initial filing as a "motion for judgment on the pleadings" pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties' submissions in this matter are governed by Rules 6, 7, and 8 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which refer to the filings simply as a Plaintiff's brief and a Commissioner's brief.

**BACKGROUND**

## I.    Procedural Background

Plaintiff filed an application for SSI on behalf of M.I.R. in April 2022, alleging November 1, 2021 as the onset date of M.I.R.'s disability.  Administrative Record ("AR") 180.[4] The Social Security Administration ("SSA") denied the claim on October 19, 2022, AR 70-77, and denied the claim again upon reconsideration on April 7, 2023, AR 87-89.  Plaintiff requested a hearing before an administrative law judge ("ALJ"), *see* AR 124-26, and an administrative hearing took place before ALJ Lucian Vecchio on September 26, 2023 and January 9, 2024, AR 35-47.  Plaintiff appeared and testified on behalf of M.I.R.—she was the only witness to testify—and was represented by counsel at the hearing.  AR 35-47.  ALJ Vecchio became unavailable after the hearing, and the matter was reassigned to ALJ Jason Miller, AR 11; on April 23, 2024, ALJ Miller issued a decision finding that M.I.R. had not been disabled within the meaning of the Social Security Act (the "Act") since the date the application was filed, AR 11-23.  On June 3, 2024, Plaintiff submitted a request for review of ALJ Miller's decision to the SSA's Appeals Council.  AR 178-79.  On January 8, 2025, the Appeals Council denied the request for review.  AR 1-7.  That denial made ALJ Miller's April 23, 2024 decision the final decision of the Commissioner.  On March 4, 2025, Plaintiff filed the instant lawsuit seeking judicial review of ALJ Miller's decision.  ECF No. 1.

## II.    Testimonial, Medical, and Non-Medical Evidence

Both parties have provided summaries of the testimonial, medical, and non-medical evidence contained in the administrative record.  *See* Pl.'s Mem. at 2-9; Def.'s Mem. at 2-9.

---

[4] Citations to "AR" refer to the certified copy of the administrative record filed by the Commissioner.  ECF No. 11.

Based on an independent and thorough examination of the record, the Court finds that these summaries of the evidence are largely comprehensive and accurate. Accordingly, the Court adopts the summaries and discusses the evidence in the record in more detail to the extent necessary to a determination of the issues raised in this case. *See, e.g.*, *Banks v. Comm'r of Soc. Sec.*, No. 19-cv-929 (AJN) (SDA), 2020 WL 2768800, at *2 (S.D.N.Y. Jan. 16, 2020), *adopted by* 2020 WL 2765686 (S.D.N.Y. May 27, 2020).

## APPLICABLE LEGAL PRINCIPLES

### I. Standard of Review

The scope of review in an appeal from a Social Security disability determination involves two levels of inquiry. First, the court must review the Commissioner's decision to assess whether the Commissioner applied the correct legal standards when determining that the plaintiff was not disabled. *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). "'Failure to apply the correct legal standards is grounds for reversal.'" *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

Second, the court must evaluate whether the Commissioner's decision was supported by substantial evidence. *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 106 (cleaned up). The "substantial evidence" standard of review is "very deferential," and it is not the function of the reviewing court "to determine *de novo* whether a plaintiff is disabled." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (cleaned up). To determine whether a decision by the Commissioner is supported by substantial evidence, courts must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Id.* (cleaned up). "The substantial evidence standard means once an ALJ finds facts, [courts] can reject those facts only if a reasonable

factfinder would *have to conclude otherwise*." *Id.* (cleaned up) (emphasis in original). "'If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.'" *Id.* (quoting *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014)).

## II.    Determining Disability for Benefits for Children

The SSI program provides benefits to "needy aged, blind, or disabled individuals" who meet certain statutory income and resource limitations. *Ruff ex rel. L.M.F. v. Colvin*, No. 14-cv-2433 (RWS), 2015 WL 694918, at *8 (S.D.N.Y. Feb. 18, 2015) (citing 42 U.S.C. § 1381 *et seq.*). Under the Act, a child under the age of 18 is considered "disabled" for purposes of SSI eligibility if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

### a.    Three-Step Inquiry

Pursuant to SSA regulations, the Commissioner applies a three-step analysis to determine whether a particular child claimant is disabled. 20 C.F.R. § 416.924; *see Pollard*, 377 F.3d at 189. First, the Commissioner considers whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the claimant is engaged in substantial gainful activity, then the Commissioner will find that the child is not disabled; if the child is not engaged in substantial gainful activity, the Commissioner proceeds to the second step, at which the Commissioner considers whether the child has "an impairment or combination of impairments that is severe." 20 C.F.R. § 416.924(a). If the child does not have a severe impairment, he or she is not considered to be disabled. 20 C.F.R. §§ 416.924(a), (c).

If the child has a severe impairment, the Commissioner proceeds to the third step, which requires a determination of whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the criteria of an impairment found in the regulatory "Listing of Impairments" at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  20 C.F.R. § 416.924(d).  To "functionally equal" a Listing, the child's impairment must result in "marked" limitations in two of six "broad areas of functioning" called "domains," or an "extreme" limitation in one domain.  20 C.F.R. §§ 416.926a(a), (b)(1).  The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  A limitation is considered "marked" if it "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  A marked limitation "is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  *Id.*  A limitation is considered "extreme" if it "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).  An extreme limitation "is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least three standard deviations below the mean."  *Id.*

### b.  Additional Regulatory Standards

In claims involving childhood disability, the SSA provides additional regulatory standards for determining whether a child has a "marked" or "extreme" limitation.  To have a marked or extreme limitation in a particular domain, it is not necessary that all activities or

functions within the domain be restricted.  Rather, a marked or extreme limitation may be present "when [a child's] impairment(s) limits only one activity [within the domain] or when the interactive and cumulative effects of [his or her] impairment(s) limit several activities."  20 C.F.R. §§ 416.926a(e)(2)(i), (e)(3)(i); *see also McClain v. Barnhart*, 299 F. Supp. 2d 309, 315 (S.D.N.Y. 2004) (citing *Quinones v. Chater*, 117 F.3d 29, 31-32, 36 (2d Cir. 1997)).  Additionally, the Commissioner must consider the "interactive and cumulative effects" of a child's impairment(s), as the combined results of multiple less-than-marked impairments may be marked or extreme.  20 C.F.R. § 416.926a(c); *see also McClain*, 299 F. Supp. 2d at 315 (citing *Encarnacion v. Barnhart*, 191 F. Supp. 2d 463, 474 (S.D.N.Y. 2002)).  Finally, the Commissioner must assess whether any particular limitation may have effects in more than one domain.  Because "any given impairment may have effects in more than one domain," it is necessary to "evaluate the limitations from [a child's] impairment(s) in any affected domain(s)."  20 C.F.R. § 416.926a(c); *see also Goins o/b/o J.D.G. v. Berryhill*, No. 16-cv-06398 (MAT), 2017 WL 5019273, at *3 (W.D.N.Y. Nov. 3, 2017) (citing *Encarnacion ex rel. George v. Astrue*, 568 F.3d 72, 73-74 (2d Cir. 2009)).

   c.    **Duty to Develop the Record**

"Disability-benefits proceedings are non-adversarial in nature, and therefore, the ALJ has an affirmative obligation to develop a complete administrative record, even when the claimant is represented by counsel."  *Wood o/b/o M.A.C. v. Comm'r of Soc. Sec.*, No. 19-cv-1086 (GBD) (SLC), 2020 WL 1442474, at *8 (S.D.N.Y. Jan. 31, 2020), *adopted by* 2020 WL 1436985 (S.D.N.Y. Mar. 24, 2020).  "A remand by the court for further proceedings is appropriate when the Commissioner has failed to provide a full and fair hearing, to make explicit findings, failed to

6

appropriately develop the record, or to have correctly applied the regulations." *Hairston v. Comm'r of Soc. Sec.*, No. 20-cv-5600 (KHP), 2022 WL 704011, at *6 (S.D.N.Y. Mar. 9, 2022).

## DISCUSSION

Plaintiff seeks to have the Commissioner's decision reversed and have the matter remanded to the SSA for further administrative proceedings. *See* Pl.'s Mem. at 1. She contends that ALJ Miller failed to apply the correct legal standards and that the decision is not supported by substantial evidence. Pl.'s Mem. at 1, 9-17. The Commissioner maintains that the ALJ properly applied the correct legal standards and that the decision is supported by substantial evidence. Def.'s Mem. at 11-15.

For the reasons set forth below, the Court finds that the ALJ applied the correct legal standards and that his decision is supported by substantial evidence.

## I.    The ALJ's Decision

In a nine-page opinion, ALJ Miller applied the three-step sequential analysis described above and issued a decision finding that M.I.R. was not disabled between April 25, 2022, the date of M.I.R.'s application for benefits, and the date of the decision.[5] ALJ Miller observed that under the relevant regulations, M.I.R. was a "school-age child" on the date her application was filed and at the time the decision was issued. AR 12 (citing 20 C.F.R. § 416.926a(g)(2)). At the first step of the sequential analysis, the ALJ found that M.I.R. had not engaged in substantial gainful activity since the application date. AR 12. Second, the ALJ determined that M.I.R. had

---

[5] "For SSI applications, the relevant period is between the date of the application and the date of the ALJ's decision." *Sharlene A. o/b/o D.A.C. v. Comm'r of Soc. Sec.*, No. 20-cv-00268 (JJM), 2021 WL 4437175, at *5 (W.D.N.Y. Sept. 28, 2021).

the severe impairments of a learning disorder and mild intermittent asthma.[6]  AR 12.  Third, the

ALJ concluded that M.I.R. did not have any impairment or combination of impairments that

meet or medically equal the severity of a listed impairment, AR 13, and that M.I.R. did not have

any impairment or combination of impairments that functionally equals the severity of a listed

impairment, AR 14-19.  In reaching his conclusion as to functional equivalence, the ALJ

considered and summarized the objective academic and medical records, Plaintiff's hearing

testimony, and the opinion evidence.  AR 18.  The ALJ found that M.I.R. did not have marked

limitations in two domains of functioning or extreme limitations in one domain of functioning.

Rather, the ALJ determined that M.I.R. had less-than-marked limitations in three domains of

functioning—acquiring and using information; attending and completing tasks; and health and

physical well-being—and no limitation at all in the other three domains, including the domain of

interacting and relating with others.  AR 14.  Consequently, the ALJ determined that M.I.R. was

not disabled.  AR 14, 15-19.

As for opinion evidence, the ALJ considered medical opinions, prior administrative

findings, and academic opinions, all of which he found persuasive, and all of which he found to

be consistent with the functional equivalence domain ratings set forth in the decision.  AR 18.

Specifically, the ALJ considered the findings of state agency consultants Dr. Sinha, Dr. Gilford,

and Dr. Tayab; a psychological consultative examiner opinion from Eleanor Murphy, Ph.D.; and

academic reports from M.I.R.'s "[Individualized Education Program ("IEP")] teacher," Christina

Gentile.  AR 16-18.  Dr. Sinha, a state agency pediatrician, reviewed M.I.R.'s file in October

---

[6] While Plaintiff's brief includes occasional references to M.I.R.'s asthma in its
discussion of the record, her arguments regarding M.I.R.'s alleged limitations in certain domains
of functioning do not depend on any physical conditions, including asthma.  Accordingly, the
Court views the ALJ's findings with respect to M.I.R.'s asthma and any other physical
limitations as uncontested, and will not discuss those further in this Decision and Order.

2022; Dr. Gilford, a state agency psychologist, and Dr. Tayab, a state agency pediatrician, reviewed the file in April 2023.  AR 18.  Each of the three doctors found M.I.R. "to have less-than-marked limitations in the first, second, and sixth functional equivalence domains,"[7] and no limitations in the remaining domains.  AR 18, 48-59, 61-68.  Dr. Murphy conducted a consultative examination in August 2022 and "opined that [M.I.R.'s] psychiatric problems did not appear to be significant enough to interfere with her ability to function on a daily basis, and would cause only moderate limitations to sustain concentration and complete age-appropriate tasks, adequately maintain appropriate social behavior, and respond appropriately to changes in the environment."  AR 18, 406-11.  Ms. Gentile, M.I.R.'s "IEP teacher," completed Teacher Questionnaire forms in May 2022 and November 2022, and, according to ALJ Miller, "did not indicate significant limitations of a marked or extreme degree."  AR 17, 348-405, 412-20.

In sum, after considering all of the evidence in the record, the ALJ concluded that M.I.R. had less-than-marked limitations or no limitations in all six domains of functioning, and therefore determined that M.I.R. was not disabled under the Act.  AR 19.

## II.    The ALJ Did Not Commit Legal Error

Plaintiff maintains that ALJ Miller committed errors of law (i) in the manner in which he addressed the six domains of functioning, and (ii) by failing to develop the record to seek clarification of Dr. Murphy's consultative opinion.  Pl.'s Mem. at 11.  The Court disagrees.

---

[7] Specifically, the state agency consultants found M.I.R. to have less-than-marked limitations in the domains of acquiring and using information, attending and completing tasks, and health and physical well-being.  *See* AR 53-54, 65-66.

a.      **The ALJ Did Not Err Based on the Manner in which**
         **He Addressed the Six Domains of Functioning**

Plaintiff argues, in summary fashion, that "[t]he ALJ erred because he failed to provide the basis of how he determined the level of limitation for each domain," and insists that the ALJ "is supported to provide an explanation based on the record of how he determined the level of limitation for each domain." Pl.'s Mem. at 11. Plaintiff does not cite any case to support these propositions.

It is well-established that "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits [the court] to glean the rationale of an ALJ's decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)); *accord Ryan o/b/o V.D.C. v. Comm'r of Soc. Sec.*, No. 21-2947-cv, 2022 WL 17933217, at *2 (2d Cir. Dec. 27, 2022) (summary order). Moreover, an ALJ's decision can be affirmed where the "overall decision reflects careful consideration of the record, even if the specific discussion as to [a particular] domain of functioning is not thorough." *Michelle Q. o/b/o J.J.S.Q. v. Comm'r of Soc. Sec.,* No. 23-cv-09124 (GRJ), 2024 WL 3676581, at *4 (S.D.N.Y. Aug. 3, 2024).

As set forth at greater length in Section III, *infra*, ALJ Miller's determinations with respect to the three domains of functioning that Plaintiff has challenged are supported by substantial evidence and reflect a thorough consideration and evaluation of all of the evidence in the record. The ALJ's detailed description of the evidence, including the objective academic and medical records, Plaintiff's hearing testimony, and various medical and academic opinions and prior administrative medical findings, made it possible for the Court to glean the rationale of the ALJ's decision for each of the disputed domains. Accordingly, there is no basis to remand this matter based on this allegation of legal error.

10

####    b.    The ALJ Did Not Fail to Develop the Record

Plaintiff also contends that because Dr. Murphy's opinion did not specifically track the six domains of functioning, the ALJ should have developed the record further by seeking clarification from Dr. Murphy regarding how the findings in her "medical source statement," AR 410, mapped onto the six domains, *see* Pl.'s Mem. at 11.

But Dr. Murphy's findings of, at most, mild or moderate limitations in M.I.R.'s ability to function did not in any way suggest the presence of marked or extreme limitations in any domain of functioning. *See* 20 C.F.R. § 416.926a(e)(2)(i) (a "marked" limitation in a domain is a limitation "that is 'more than moderate' but 'less than extreme'"). This was consistent with Dr. Murphy's overall conclusion that M.I.R.'s psychiatric problems did "not appear to be significant enough to interfere with [her] ability to function on a daily basis." AR 406-11; *see* AR 16-17. Notably, the limited scope of impairments set forth in Dr. Murphy's consultative opinion was also consistent with the findings of the state agency consultants, all of whom concluded that M.I.R. did not have a marked limitation in any of the six domains of functioning (and they *did* use the specific language of the domains). AR 48-59, 61-68. In light of the totality of the record evidence here, the ALJ reasonably determined that the record was sufficient to make a decision without recontacting Dr. Murphy. As such, there is no need for a remand to more fully develop the record. *Jones o/b/o J.L.J. v. Comm'r of Soc. Sec.*, No. 19-cv-0582 (WBC), 2020 WL 2494450, at *5 (W.D.N.Y. May 14, 2020) ("the ALJ did not fail to develop the record because the record was sufficient for the ALJ to make a determination"); *see also Morris v. Berryhill*, 721 F. App'x 25, 28 (2d Cir. 2018) (summary order) (finding, in the context of a treating source, that the duty to develop the record by recontacting the source arises only if the ALJ lacks sufficient evidence in the record to evaluate the source's findings).

11

**III.    The ALJ's Decision Is Supported by Substantial Evidence**

Plaintiff argues that the ALJ should have weighed the evidence differently for the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, and should have found that Plaintiff had at least marked limitations in at least two of these domains.[8]  Pl.'s Mem. at 11-17.  Again, the Court disagrees.

**a.    Acquiring and Using Information**

In the domain of acquiring and using information, SSA regulations require an assessment of how well a claimant "acquire[s] or learn[s] information," and how well a claimant "use[s] the information [they] have learned."  20 C.F.R. § 416.926a(g).  This includes assessing, among other things, whether a child is "able to use language to think about the world and to understand others and express [them]self; *e.g.*, to follow directions, ask for information, or explain something."  20 C.F.R. § 416.926a(g)(1)(ii).  A school-age child "should be able to learn to read, write, and do math, and discuss history and science," and "use these skills in academic situations to demonstrate what [they] have learned; *e.g.*, by reading about various subjects and producing oral and written projects, solving mathematical problems, taking achievement tests, doing group work, and entering into class discussions."  20 C.F.R. § 416.926a(g)(2)(iv).  School-age children "will also need to use these skills in daily living situations at home and in the community (*e.g.*, reading street signs, telling time, and making change)," and "should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing [their] own ideas, and by understanding and responding to the opinions of others."  *Id.*

---

[8] Plaintiff only disputes the ALJ's analysis as to these three domains of functioning.  *See* Pl.'s Mem. at 12-17.  The ALJ's conclusions as to the other three domains of functioning are therefore not in dispute, and need not be addressed in this Decision and Order.

Plaintiff contends that the ALJ should have found that M.I.R. had a marked limitation in this domain based on M.I.R.'s academic performance and need for additional services, and offered her own interpretation of various items of evidence in the record—with particular focus on the January 2022 and January 2024 IEP reports and the May and November 2022 Teacher Questionnaire forms—to support this argument.  *See* Pl.'s Mem. at 12-14.  But under the deferential substantial evidence standard of review, "it is not enough for plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that evidence in the record could support her position."  *Warren v. Comm'r of Soc. Sec.*, No. 15-cv-1185 (GTS) (WBC), 2016 WL 7223338, at *6 (N.D.N.Y. Nov. 18, 2016), *adopted by* 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016).  And ALJ Miller considered all of these same sources (among others) and reasonably concluded that as a whole, they supported a finding of less-than-marked limitations in this domain of functioning.

The January 3, 2022 IEP report, which was prepared when M.I.R. was seven years old and in second grade, explained that M.I.R. was performing below grade level in reading, writing, and math, AR 367-68, and described her as having a "learning disability," AR 387; *see* AR 16.  But as ALJ Miller noted, she was also reported to be "a very hard worker" and "a pleasure to work with," and a student who "enjoys guided reading and math."  AR 368; *see* AR 16.  While M.I.R. was recommended for special education teacher support services, it was reported that she was "expected to make progress in the general education curriculum" with the addition of these services.  AR 370; *see* AR 16.  M.I.R. was found to have a full-scale IQ of 89 on the Wechsler Intelligence Scale for Children, 4th Edition, which placed her within the upper limit of the low average range for this assessment.  AR 390-91; *see* AR 16.

13

In the "Acquiring and Using Information" section of the Teacher Questionnaire form completed by Ms. Gentile on May 25, 2022, M.I.R.'s teacher rated her as having "no problem" in response to one question, having "a slight problem" in response to six questions, and having "an obvious problem" in response to two questions.  AR 349.  Ms. Gentile did not rate M.I.R. as having "a serious problem" or "a very serious" problem in response to any of the questions in this section.  AR 349.  Similarly, in completing this same section of the Teacher Questionnaire form on November 23, 2022, Ms. Gentile rated M.I.R. as having either "a slight problem" (one question) or "an obvious problem" (nine questions) in response to the questions posed, but never "a serious problem" or "a very serious problem."  AR 414; *see* AR 17.  While "[t]here is no bright line rule denoting how many slight, obvious, or even serious problems in functional areas equate to a marked limitation in the relevant domain," *Tina T. o/b/o J.J.W. v. Comm'r of Soc. Sec. Admin.*, No. 23-cv-500 (GTS) (TWD), 2024 WL 4463298, at *8 (N.D.N.Y. Apr. 19, 2024), *adopted by* 2024 WL 4132200 (N.D.N.Y. Sept. 10, 2024), courts have held that limited indications of serious or very serious findings in teacher questionnaire forms can support assessments of less-than-marked limitations in particular domains of functioning, *see Tanya D. o/b/o L.J.B. v. Comm'r of Soc. Sec.*, No. 21-cv-06090 (LJV), 2023 WL 4999833, at *4 (W.D.N.Y. Aug. 4, 2023).

ALJ Miller also considered the January 2, 2024 IEP Report, which continued to classify M.I.R. has having a learning disability.  AR 749; *see* AR 17.  In this report, Plaintiff was described as an "enthusiastic learner" who "frequently participates across all academic areas" and "likes to share her thoughts and ideas with others."  AR 747-48.  The report noted that M.I.R. often became "distracted when working independently," and that she continued to perform below grade level in reading, writing, and math.  AR 747, 750.  But as highlighted by

14

ALJ Miller, M.I.R. had progressed to the point where she was now recommended for integrated co-teaching services in math and language arts in a general education classroom, along with weekly group counseling.  AR 752-53; *see* AR 17.

Moreover, as ALJ Miller explained, state agency consultants Dr. Sinha (2022), and Dr. Gilford and Dr. Tayab (2023), concluded that M.I.R. had less-than-marked limitations in this domain.  AR 18, 53, 65.  An ALJ is entitled to rely on the opinions of state agency medical consultants, "since such consultants are deemed to be qualified experts in the field of social security disability." *Tina T. o/b/o J.J.W.*, 2024 WL 4463298, at \*10.

Taken as a whole, the ALJ's determination that M.I.R. had less-than-marked limitations in the domain of acquiring and using information is supported by substantial evidence. Ultimately, it is "not . . . enough for plaintiff to show that the evidence supported a finding of some limitation in [this domain]; she must establish that no reasonable factfinder could fail to find a 'marked' limitation as to this domain . . . ," *Cruz o/b/o M.M.W. v. Comm'r of Soc. Sec.*, No. 19-cv-9253 (AT) (BCM), 2021 WL 4123969, at \*15 (S.D.N.Y. Aug. 25, 2021), *adopted by* 2021 WL 4124225 (S.D.N.Y. Sept. 9, 2021), and Plaintiff has not done so here.

b. **Attending and Completing Tasks**

With respect to the domain of attending and completing tasks, SSA regulations require an assessment of how well a child is "able to focus and maintain [their] attention, and how well [they] begin, carry through, and finish [their] activities, including the pace at which [they] perform activities and the ease with which [they] change them."  20 C.F.R. § 416.926a(h). School-age children should "be able to focus [their] attention in a variety of situations in order to follow directions, remember and organize [their] school materials, and complete classroom and homework assignments," as well as "concentrate on details and not make careless mistakes in

15

[their] work (beyond what would be expected in other children [their] age who do not have impairments)." 20 C.F.R. § 416.926a(h)(2)(iv). In addition, they should "be able to change [their] activities or routines without distracting [themselves] or others, and stay on task and in place when appropriate," and also should be able to "sustain [their] attention well enough to participate in group sports, read by [themselves], and complete family chores." *Id.* School-age children also should "be able to complete a transition task (*e.g.*, be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation." *Id.*

Plaintiff asserts that the ALJ should have found that M.I.R. had at least a marked limitation in this domain. Pl.'s Mem. at 14. Referring to the two IEP reports and the two Teacher Questionnaires, Plaintiff notes various examples of M.I.R.'s difficulties carrying out instructions, completing assignments, and becoming frustrated and overwhelmed when tasks are too difficult. *Id.* at 15-16. Again, however, the ALJ's consideration of the entire record— including the same record exhibits identified by Plaintiff—makes clear that there was substantial evidence to support his finding of less-than-marked limitations for M.I.R. in the domain of adapting and completing tasks.

ALJ Miller acknowledged that the January 3, 2022 IEP report included observations that M.I.R. would get frustrated if tasks were too difficult or if teachers did not provide support, and that she would become overwhelmed in such situations; teachers also reported that M.I.R. had difficulty "focusing for long periods of time." AR 16, 394. At the same time, that IEP report explained that M.I.R. "is able to follow instructions," though she "struggles when instructions involve academic demands." AR 394. Meanwhile, as ALJ Miller pointed out, the January 2, 2024 IEP report did note that M.I.R. became distracted when working independently, benefited from verbal reminders and positive reinforcement, and at times would argue with her teacher

16

when redirected.  AR 747; *see* AR 17.  But the ALJ was able to rely in part here on the findings of the consultative examination performed by Dr. Murphy, who found that Plaintiff displayed only mildly impaired attention and concentration, and recent and remote memory skills.  AR 409.  Dr. Murphy opined that M.I.R. would have moderate restrictions in her ability to sustain concentration and complete age-appropriate tasks, but only a mild limitation in her ability to attend to, follow, and understand age-appropriate directions.  AR 410; *see* AR 16-17.  This opinion was consistent with the assessments of state agency consultants Dr. Sinha (2022), and Dr. Gilford and Dr. Tayab (2023), who also concluded that M.I.R. had less-than-marked limitations in this domain.  AR 18, 53, 65.

In the "Attending and Completing Tasks" section of the Teacher Questionnaire form completed by Ms. Gentile on May 25, 2022, M.I.R.'s teacher rated her as having "a slight problem" in response to nine questions and having "an obvious problem" in response to four questions.  AR 350.  Ms. Gentile did not rate M.I.R. as having "a serious problem" or "a very serious" problem in response to any of the questions in this section.  AR 350.  She added that "multi-step directions (usually 3 or more) can be challenging for [M.I.R.]," and that she "sometimes rushes and makes silly / careless mistakes," but that when she is "asked to go back and check her work, she typically can fix errors with little teacher support"; according to Ms. Gentile, though, M.I.R. does require "check-ins to support inattention."  AR 350.  In completing this same section of the Teacher Questionnaire form on November 23, 2022, Ms. Gentile rated M.I.R. as having "no problem" in response to one question, "a slight problem" in response to nine questions, "an obvious problem" in response to two questions, and "a serious problem" in response to one question (carrying out multi-step instructions).  AR 415; *see* AR 17.  These

17

relatively modest assessments support the ALJ's determination as to this domain.  *See Tanya D. o/b/o L.J.B.*, 2023 WL 4999833, at *4.

At bottom, while the evidence in this domain of functioning is not wholly one-sided, Plaintiff's arguments amount to a disagreement with the ALJ's weighing of the evidence.  But it is not the function of this Court to re-weigh evidence or consider *de novo* whether M.I.R. is disabled.  *See Butler o/b/o D.D.B. v. O'Malley*, No. 23-cv-9174 (VR), 2025 WL 934419, at *6 (S.D.N.Y. Mar. 27, 2025) ("Plaintiff certainly highlights parts of the record supporting limitations, but conflicting evidence in the record exists, as the ALJ noted.").  And where "evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld."  *Schillo*, 31 F.4th at 74.  Accordingly, the Court finds that substantial evidence supports the ALJ's conclusion that M.I.R. has a less-than-marked limitation in the domain of attending and completing tasks.

### c.    Interacting and Relating with Others

With respect to the domain of interacting and relating with others, SSA regulations require an assessment of a child's ability to "initiate and sustain emotional connections with others, develop and use the language of [their] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others."  20 C.F.R. § 416.926a(i).  School-age children should be able to "develop more lasting friendships with children who are [their] age" and "understand how to work in groups to create projects and solve problems," as well as "have an increasing ability to understand another's point of view and to tolerate differences" and "talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand."  20 C.F.R. § 416.926a(i)(2)(iv).

18

The ALJ relied on various items in the record to support his conclusion that M.I.R. did not have any limitations in this domain.  The January 3, 2022 IEP report explained that despite some of her academic challenges, M.I.R. was "a model student behaviorally," and enjoyed helping others and socializing with friends; it was further reported that she "gets along with others in her class, has friends, and has playdates outside of school."  AR 368-69; *see* AR 16.  The ALJ also relied on the May 2022 Teacher Questionnaire form completed by Ms. Gentile, where she reported "no problem" in response to eight of 13 questions regarding interacting and relating with others, and only "a slight problem" in response to four of 13 questions (there was no response to one of the questions).  AR 351.  The same page of the questionnaire described M.I.R. as "very social" and as someone who "interacts appropriately with others."  AR 351.  Similarly, Ms. Gentile reported in the November 2022 Teacher Questionnaire that no problems were observed in this domain, and that M.I.R.'s functioning appears age-appropriate.  AR 416.  ALJ Miller also relied on M.I.R.'s January 2, 2024 IEP report, which described her as "social and friendly student" who "enjoyed socializing with peers throughout the school day."  AR 748.  As Plaintiff argues, however, *see* Pl.'s Mem. at 16, that particular report also highlighted that M.I.R. is often involved in conflicts with her peers during lunch and recess, and that she frequently requires adult intervention in order to solve these conflicts, AR 748.  ALJ Miller expressly referenced this observation in his discussion of the 2024 IEP report.  *See* AR 17.

State agency consultants Dr. Sinha (2022), and Dr. Gilford and Dr. Tayab (2023), concluded that M.I.R. had no limitations in this domain.  AR 18, 54, 65.  And while Dr. Murphy opined in her August 18, 2022 report that M.I.R. would have moderate limitations in her ability to adequately maintain appropriate social behavior, AR 406-11, the ALJ acknowledged this finding and appropriately pointed out that it did not equate to a finding of a marked or extreme

19

limitation, AR 18; *see Kelinne O. o/b/o K.P.Q. v. Comm'r of Soc. Sec.*, No. 23-cv-812 (BKS) (ML), 2024 WL 2027907, at *4 (N.D.N.Y. Apr. 16, 2024) (finding that consultative examiner's assessment of moderate limitation supported ALJ's conclusion that claimant had less-than-marked limitation in particular domain of functioning).

Again, on balance, the ALJ's assessment of M.I.R.'s limitations is supported by a reasonable reading of the record, and the Court finds that substantial evidence supports the ALJ's determination as to the domain of interacting and relating to others. *See Schillo*, 31 F.4th at 74 ("The substantial evidence standard means once an ALJ finds facts, [courts] can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id.* (cleaned up) (emphasis in original)).

* * * * * * * * * *

In sum, the ALJ did not fail to apply the correct legal standards, and the ALJ's decision with respect to each of the challenged domains of functioning is supported by substantial evidence. The ALJ's decision demonstrates that he weighed the record evidence applicable to each domain, including those suggestive of greater limitations, before reaching his determination. Accordingly, remand is not warranted in this matter.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion (ECF No. 16) is DENIED.

The Clerk of Court is respectfully directed to enter judgment in favor of the

Commissioner and close this case.

Dated:  March 25, 2026
        White Plains, New York

**SO ORDERED.**

_____

ANDREW E. KRAUSE
United States Magistrate Judge

21